All rise. Illinois Assembly Court, Third Division, is now in session. I will adjust with Judge Leroy K. Martin. It is decided. Please be seated. Mr. Kirby, how are you, sir? I'm just fine, Your Honor. Morning. Morning. Morning. Could you call the case, please? Taylor v. D.A. Page. Counsels who are going to argue, would you please rise and introduce yourselves for the record? Good morning, Your Honor. Adam Decker. Come up to the microphone, please. Good morning. Adam Decker on behalf of the defendant appellate, the Chicago Housing Authority. Thank you, Mr. Decker. Counsel? Good morning. Steven Lucuses for the plaintiff, Eppeline Joseph Taylor. Very good. Thank you, sir. Gentlemen, it is normally our habit to allow 15 minutes for argument. Would you care to reserve some time for rebuttal? Yes, I'd like to reserve three minutes for rebuttal. Very good. Then with that, gentlemen, we will begin. Please be seated. Good morning, and may it please the Court and Counsel. This appeal is all about duty. Did the CHA owe Mr. Taylor a duty of care to act or refrain from acting in any of the ways that Mr. Taylor criticized the CHA's conduct at trial? And more specifically, did the CHA owe a duty to independently verify that private security guards, all of whom were employed by a third-party independent contractor, met various contractually imposed requirements that are found solely in the security services agreement the CHA entered into with AGB Investigative Services for AGB to protect CHA property, residents, and guests? The answer to that question is no. There's no duty here. As we'll discuss today, Mr. Taylor is unable to establish a duty of care under any viable theory under Illinois law. He cannot do so based on contractual requirements in the security services agreement. He cannot do so based on the voluntary undertaking in hiring a private security company. And he cannot do so under Illinois common law. And no duty means no negligence as a matter of law. The CHA therefore requests that this Court reverse Mr. Taylor's jury verdict and enter judgment in the CHA's favor or alternatively remand for a new trial. The request of relief today, there's going to be a lot of overlap between the two arguments, but I'd like to focus predominantly on the JNOV request. I am nonetheless prepared to discuss any questions the Court may have regardless of topic. Based on the critical importance it played in the trial below, I'd like to start with the security services agreement. Mr. Taylor's attorney argued repeatedly throughout trial that the CHA was negligent because it failed to supposedly enforce certain contractual requirements in the agreement with AGB, specifically that Mr. McLaurin, the security guard who ultimately shot Mr. Taylor, did not have excellent prior experience or at least three years of prior experience before he was staffed at CHA properties. And because the CHA supposedly failed to enforce this contractual requirement, it was thus responsible for Mr. Taylor's ultimate injury. Let me ask you a question. Pippin v. Chicago Housing Authority, is that applicable here? Your Honor, I think that we can learn a lot from Pippin based on the factual similarities. So Pippin also involved the CHA and it also involved the decision to hire a private security company. And the Supreme Court ultimately said, well, when the CHA is going to hire a private security company, the extent of that voluntary undertaking is ensuring that you hire a competent contractor. So really we're looking at the limitations of a negligent hiring claim here. As we've discussed in the brief, there's really no evidence to support that type of claim in this case. But I think more importantly, no negligent hiring issue was included in the issues instruction, so that seems to be an abandoned issue because Mr. Taylor alleged negligent hiring claims in his pleadings and specifically the second amended complaint that was operative at trial. But wasn't the negligence sort of assumed throughout the whole trial from opening statement all the way through closing argument? Could you please clarify, Justice Reyes? So what I mean is that the assumption, and maybe it wasn't specifically addressed, but I think there was an assumption when you look at the record, that there was some arguments made with regards to negligent hiring. That certainly is how the CHA framed its defense case. I think that's fairly clear from the questioning and the testimony opening and closings. But there was no negligent hiring allegation in the issues instruction, so I don't think the jury had any basis to find negligence based on the negligent hiring allegation. We are essentially looking at five interrelated allegations of negligence in this case that all work their way back to the security services agreement. Whether or not Mr. McLaurin had excellent prior experience, whether he had three years of prior experience, the security audit folder that the CHA supposedly maintained, all of these relate back to this duty that was supposedly imposed by the contract. But under Illinois law, Mr. Taylor could not do that because he is trying to impose a duty based on a private contract and impose a heightened duty of care above and beyond what the law already requires. I think the Illinois Supreme Court's decision in Rhodes is precisely on point here, and the court there explained that unless the law already imposes a duty of care on the defendant, a plaintiff cannot look to a contract and point to what the contract requires and try and impose a heightened duty. So taking it back to this case to put it in more concrete terms, Mr. Taylor would have to be able to show that there is a statute, regulation, ordinance, or other law that imposes an obligation for security guards to have three years of prior experience in order for them to be qualified or competent to provide guard services. He's not going to be able to do so. He was prompted below, couldn't do so, couldn't do so in the briefs, and that's because that's actually contrary to the licensing regime that Illinois already has in place. This was discussed at the testimony below. Mr. McLaurin discussed that he had 20 hours of unarmed guard training. He had to do 40 more hours before he could become an armed guard. He had additional certification requirements in order to carry a firearm on the job. So the state of Illinois has already said what the standard is for being a security guard or who can act as a guard. But when we look at the three-year requirement, that is found solely in the security services agreement. So under Rhodes and a more recent decision by the Supreme Court, Doe v. Coe, that is improper. We really need to take the contract off the table here. So what's the purpose of the policy then? Is it just window dressing for the public so they can say, oh, yeah, well, we have policies set out to protect the public and the people that work for us? I wouldn't call them window dressings necessarily, Justice Rhodes. I think these are self-imposed safety measures or obligations that the Doe v. Coe decision I just mentioned, it actually explained why we shouldn't be imposing heightened duties on private companies or municipal entities because when we are going to take a contractual provision that requires something above and beyond what the law already requires and say, well, you could be liable if you don't live up to that obligation, we are going to disincentivize parties from self-imposing measures like that moving forward that are intended to provide better safety to the public and to their employees. So under Doe v. Coe, I think that what Mr. Taylor tried to do with these contractual-based negligence allegations is just improper as a matter of law. What level of control does CHA impose or exert over McLaren or over AGB? Well, if we look at the trial testimony, we have two employees who worked for AGB, which is the security company. There was Preston Long and Mr. McLaren. Both of them testified on cross-examination that they did not have any interactions with CHA personnel and that they were reporting to and taking their staffing positions and their responsibilities from individuals at AGB. So I think the reality on the ground was that the CHA really had no control or supervision over how AGB security guards were performing their obligations under that contract. That squares perfectly with Deputy Chief Langston, who was the Deputy Chief of our Property and Asset Management, who testified at trial for the CHA. He, too, said all of these supervisory obligations and responsibilities are on AGB or any third-party contractor who's performing services for the CHA pursuant to a contract. So I don't think there's any facts of record in this case to say that the CHA really was micromanaging anything that AGB and its guards were doing. So if that leads to somewhat of a retained control argument, I know Plaintiff raised that in his brief under Section 414 of the Restatement of Torts. I don't think there's any evidence in the record to support that, so I don't think that we can disregard AGB's independent contractor status and essentially impose vicarious liability on the CHA for AGB's decisions or its actions or omissions. What about, I'm going to mispronounce this, but Brent Jenner versus Bethalo Pizza, the 5th District case? Sure, yeah, Your Honor. So I think that relates more closely to the common law duty analysis, and I'm sure the Court's well aware of the four factors we're looking at here, reasonable foreseeability of injury, likelihood of injury, burden of imposing the duty and the consequences of doing so. I think Brent Jenner is a pretty poor fit here. That involved a pizza delivery company and a franchising entity. Aren't the facts somewhat similar here? No, I would suggest they're not, and I think there is a better argument for Brent Jenner than if the injury in this case was based on Mr. McLaurin and he got into a vehicle accident with somebody else, because pursuant to the contract, maybe there were roving agents that needed to go from point A to point B and that required getting on the road. But I think it's very unforeseeable and unlikely for this chain of events to be foreseeable to the CHA. Mr. McLaurin saw men in a car firing guns, followed them on the highway for a mile and a half to two, got out, got in a standoff with one of them, fired a few rounds in self-defense, hit Mr. Taylor, who was 300 to 500 feet away in a Wendy's drive-thru. This was nowhere near CHA property. Mr. Taylor wasn't a CHA resident. He wasn't a CHA guest. I think this is what the Supreme Court has characterized as a freakish, bizarre, or fantastic incident that is not reasonably foreseeable as a matter of law, meaning no duty could be imposed under the common law. Mr. Taylor also couldn't rely on that contract in order to demonstrate negligence because he was a total stranger to that contract as well. He wasn't a party. I think that should be an uncontroversial proposition. The CHA and HEB were the only parties. He also wasn't an intended third-party beneficiary because he wasn't specifically named in that contract and he didn't belong to a class of people for whom the contract was entered into, specifically CHA residents, social guests, and others who were lawfully on the property. So this Court in Grabinski, for instance, said that a complete stranger to a contract, it cannot seek to impose court liability on two contracting parties when they have nothing to do with that contract. Justice Rochford, I saw that you were on the panel in Grabinski, so you know that case better than I do. But I think the outcome should be the exact same thing as Grabinski because Mr. Taylor is a stranger, not an intended third-party beneficiary, so he can't rely on this contract to demonstrate negligence. I'd like to return back to the common law duty analysis because the last two factors, that being the burden of imposing a duty and the consequences of doing so, I think weigh strongly against imposing a duty here because imposing this kind of duty on the CHA would drastically expand the scope of its potential liability because we're not talking about injuries that are just taking place on CHA property or involving people who live on CHA property or are visiting. We are expanding the scope of potential liability to anyone in the city of Chicago, regardless of geographic location, and potentially beyond because I don't see a logical limiting principle that we would say, oh, well, anyone within five miles of a CHA property could establish a duty, but anyone beyond that couldn't. It's too wishy-washy. So our limit here is just CHA property then? Especially if you look at the extent of the voluntary undertaking, which is hiring AGV as the security company, the purpose of that contract was to protect the property itself, the residents, social guests, and others lawfully on the property. So I think if we're going to stick closely to PIPBN and its progeny that talk about a voluntary undertaking theory of negligence, it really is going to be limited to those classes of people. And also, the voluntary undertaking theory of liability, the Supreme Court, this Court, and I believe every district of the Appellate Court Division has said, is narrowly construed. So you really have to look at the purpose for which that contract was entered into. So if it's to protect property, residents, and guests, that's what we're going to limit the undertaking to. Just to follow a little bit further, let's say it's across the street from a CHA property. Not CHA property is a private and owned property, but it comes from a CHA property out onto the street and then goes to a non-CHA property. What do we do with that type of situation? I think we have to stick with a no-duty or no-liability rule in that instance just because the CHA's main function is a landlord. So it owns property throughout Chicago. It contracts with property management companies. It has other service providers. So we are not going to be completely depriving a plaintiff of a recovery here because Mr. Taylor had viable defendants. Mr. McLaurin and AGB were both defendants in this case. They were also the culpable parties because AGB was the hiring party. AGB controlled the manner of his guard details, controlled the operative details of his work. And Mr. Taylor decided to settle this case against AGB and Mr. McLaurin literally on the courthouse steps. And he has every right to do so, but that in no way lowers the burden for proving negligence against the CHA or for running roughshod over Illinois law that I think prevents him from doing exactly what was done in the trial below. Can you talk about what may be the elephant in the room and the fact that you're raising an issue of duty, which is a question of law, that wasn't raised by the CHA in any kind of dispositive motion, and this went to the jury. Talk to me about the arguments of forfeiture slash waiver in this case. Thank you, Justice Rochford, because that does seem to be kind of the issue of the day, but I think when you take a closer look at it, this really becomes a non-issue. As for the dispositive motion argument that the CHA didn't raise this in a 2615 or 2619 or its summary judgment, I'd like to point out that Mr. Taylor has not cited one case, not one case, saying that that is somehow a requirement for preserving a duty argument and a motion for JNOV. I think that's telling because it would set a pretty odd precedent that could be unjust and unworkable, because as a case progresses from pleadings to summary judgment to trial, theories of the case change. For instance, I said that under Pippin, there could potentially have been a negligent hiring claim. There have been negligent hiring allegations in the complaint since day one. Now, they ultimately lost their way at trial because it was abandoned, but if we had filed a section 2615 motion at the very beginning of the case, I don't think it would have been fully dispositive based on Pippin and the existence of the negligent hiring allegation. So could we have done so? Yes. I think the better question, though, is whether that is dispositive of a forfeiture or waiver, and I don't think it is, specifically because we denied the allegations of duty in our pleadings. We raised the issue of the contractually based duty in pretrial motion and limine arguments. We raised it again at the jury instruction conference. We raised it again post-trial in our post-trial motion, and we pursued this issue on appeal. So I think that the duty issue has been adequately preserved, and this Court can certainly look at that issue with fresh eyes on de novo review, as we advocate for here. In the instruction conference, there wasn't any claim in the issue instruction that the CHA was negligent because of negligent hiring. That wasn't in the issue instruction, was it? That's correct. But there was some indication from the CHA that it could be held liable for negligent supervision, I think. Yes, Your Honor. So how does that fit in what you're arguing now? Sure. So just to clarify the record, during the issue instruction we had competing 20.01s. The plaintiff provided his with the five issues that ultimately went to the jury in this case. The CHA objected based on the duty issue here and provided an alternative instruction. I believe, Justice Robsford, you're right, it said the CHA negligently supervised its employees or agents. That instruction was tendered. It was ultimately rejected, though. So I don't think this is a case of invited error where we provided an issues instruction that the jury ultimately found in favor of. So I think the plaintiff still has the burden post-trial of demonstrating that there was a duty to act or refrain from acting in every way in the issues instruction. So while that might have some impact on the instructional claim that we're raising here, I don't think it has any impact on the J&OV motion when we have to take a look at whether or not there was a duty as a matter of law. And for all of the reasons that we've discussed here today and in the briefs, I submit there's no duty. Unless the Court has further questions for me at this time, I will just reserve the rest of my time for rebuttal. Thank you, sir. Thank you. Counsel?  May it please the Court? Counsel? It was the duty of the defendant before and at the time of the occurrence to use ordinary care for the safety of the plaintiff. That means it is the duty of the defendant to be free from negligence. This is the instruction that the CHA told Judge Harvey to provide to the jury. Now the CHA appears before you and argues that it has not weighed or forfeited any argument over duty, essentially a complete 180 from the position that they took before the trial court. The CHA also took the position in its author 20.01 instruction that yes, it was not given to the jury, but they moved from the strategy that the CHA could also be found to have breached its duty to Joseph Taylor by failing to adequately train and supervise its agents and employees, that the CHA failed to adequately train and supervise AGB investigative services and its guards. Notably, during the jury instruction conference, Counsel Ryan Harrington for the CHA and Mario Evelich for the plaintiff met to discuss the issue instruction and they agreed upon the actual issue instruction that was submitted to the jury. Notably, the fifth breach listed in the issue instruction was read that the jury states that the CHA failed to manage AGB while AGB provided security services for CHA properties, essentially synonymous with the instruction that the CHA wished to offer. Yet now the CHA claims that it hasn't forfeited any arguments over duty and it hasn't waived any arguments over duty. This case is not a case about whether there's a duty over common law. This case is whether or not the doctrine of waiver and forfeiture should stand. The CHA is asking this court to ignore the fact that the CHA waived any arguments, actually all the arguments that it makes in its appellate brief, because any sensical argument it currently makes today was first made in its appellate brief. One of them is actually first made in its actual reply brief. It's not this panel's obligation to bail out the CHA for a defense strategy that failed at the pretrial level, at the trial level before the jury, and in their post-trial motion. Now I'm just going to spend a little bit of time on the doctrine of waiver. The CHA's overall argument is really divided into two buckets. Their argument entitled to judgment notwithstanding the verdict based on a lack of legal duty. The second argument they make is that they're entitled to a new trial because the issue instruction was somehow fatally deficient. All of the arguments they make in regards to both points, however, were waived at trial. As this court knows from the record, the CHA never moved to dismiss the lack of duty. They didn't file a motion for summary judgment arguing lack of duty, which would have been timely, however, would have failed on the merits that I will explain. They didn't move to a directive verdict based on a lack of duty. Instead, they put on their case in chief, discovery closed, and they asked the court to read the duty instructions as some negligence to the jury, to instruct the jury what the definition of negligence was, to instruct the jury what the definition of ordinary care was, that the law does not say how a reasonably careful person would act under the circumstances. That it's for you to decide, the jury to decide. And as I said, instructing the jury as to the definition of the duty to use ordinary care. That the CHA owe my client the common law duty of reasonable care. So are you arguing that maybe the concept of presenting to a jury duty might have been something that was too hard to kind of make manageable and they decided just to kind of wait and bring it up here then? I think we can look at the Pippin case as far as how the case should have probably proceeded. When you look at Pippin, for instance, Pippin really has nothing to do with the present case, but considering it's a Supreme Court decision that involves the same party, Chicago Housing Authority, I think it's somewhat instructive as to how cases are supposed to flow. It's not like the CHA appeared pro se. They had an entire legal department representing them in this case. The question of duty is not a question for the jury. Breach of duty is, and these are distinct elements. If the CHA wanted to argue that there was a lack of duty, they should have brought up that theory at summary judgment. Instead of going before the jury, agreeing that they owed a duty, and then proceeding to argue the question of breach, approximate cause, and damages. It's said that the CHA did, after trial, they filed a post-trial motion arguing, and here's the issue, they didn't preserve this argument about duty in their post-trial motion. They took the statement that internal guidelines cannot create a duty, and we agree with that. Okay, we agree with that. That's true under Illinois law. But what they did was, they conflated two separate elements of negligence, duty and breach, and they argued that somehow the issue instruction was improper because it instructed the jury that internal guidelines could create a duty. That's not what we did. We don't believe that, and frankly, that argument is nonsensical. When it comes to the breach instruction, the issue is, did the CHA breach the common law duty of reasonable care that was owed to Joseph Taylor, that the CHA agreed and owed? So there was nothing in the CHA's post-trial motion that was preserved on appeal in regard to the issue of duty, outside of arguably foreseeability, if they didn't waive that earlier with their actions before the trial court, before the post-trial motion. Now, this argument equally applies to their motion seeking a new trial. They made the same conflation argument regarding duty and breach and the issue's instruction at the post-trial motion level. They did not preserve the objections they now make for the first time on appeal. Therefore, those arguments are also waived, continuing the theme of waiver in this case. As far as the substance of the CHA's argument regarding duty, they do rely heavily on this Pippin v. CHA case. It's a practical matter. Pippin applied in this case. The CHA should have been jumping up and down with that decision at the pleading stage and certainly no later than summary judgment. But apparently the CHA agreed that it did not apply based on their action at the trial, based on the fact that they agreed they might find duty of reasonable care and they agreed they could breach that duty of care by failing to supervise and train each of the investigative services and their guards. The CHA exaggerated the holding in Pippin to state that any time the CHA enters into an independent contract with somebody, their duty to anybody injured as a result of what happens with that independent contractor is limited to whether or not the CHA engaged in reasonable means in hiring that contractor. It's as if they believe this holding created some sort of limited immunity, and that's not what occurred. In the Pippin case, Pippin started from the basis that there was no duty at law. Property owners owe no duty to invitees to protect them from criminal acts. What Pippin said was that the only duty that the CHA could be held liable for is a duty or action that they voluntarily undertake. And in Pippin, the voluntary action that the CHA undertook was to not provide security services but hire a security company that used reasonable means in hiring that security company. Hence, negligent hiring theory. That's not our case. As I noted previously, Pippin was heard at the summary judgment level. Properly. Not after trial. As the reasons I stated, where the CHA actually admitted to duty. Secondly, we didn't start our case from the baseline of no duty. We started our case from the baseline of the CHA owes my client a common law duty of reasonable care. And if they called for summary judgment at the appropriate time, we would have argued that the CHA retained control over the means, methods, and operative details of AGB investigators' work. And if you look at the record of trial, which if it was a summary judgment motion, we would have relied on discovery depositions, which were far more voluminous. But we're stuck with the trial record before this court based on how this case has proceeded. If you look at the testimony of Leonard Langston, the person most knowledgeable of the CHA, what he testified to on adverse direct, he was asked an open-ended question, no less. Did the CHA manage AGB investigative services? And his answer was, correct. We managed the contract. Well, let's look at what the contract actually states. Because the contract indicates that the CHA retained the means and methods over the operative details of AGB's work. This is part of the record. The contract was in evidence. C706, AGB guards must adhere to CHA security protocols and procedures as directed by the CHA and the on-site property manager, who also works for the CHA. This is not some general supervision. This is direction. It's a command. It's control over the operative details of AGB's work. C706, AGB cannot carry non-lethal weapons without prior written authorization by the CHA. This is the CHA controlling the means of AGB's work, the very tools that AGB uses as part of its work. Page C713, guards will obtain permission from the CHA before apprehension or detention. If an employee is involved, CHA standard policy must be strictly adhered to. AGB guards may even have discretion to perform the job they were hired to do. If this was a true independent contractor, this wouldn't be a factor. Page C715-716 even tells guards how they must handle phone calls down to specific responses and greetings they must give people. Page C686-687 dictates who AGB could hire to perform work. AGB was required to hire 30% of its workforce for maybe residents of housing developments where AGB would work, other CHA housing developments, or other low-income housing residents. These are not examples of overriding supervisory authority asking for reports, dedicating security work to an independent contractor as presumably occurred in the PIPA matter. This is direct routine control of the means and methods of AGB investigators' work. Counsel raises one other issue regarding duty, and that's a question of foreseeability. The cases that are cited, notably, counsel doesn't get into the specific facts. But one of them involves a situation where a minor was involved in a car accident, was ejected from the vehicle from 30 feet in the air, landed on top of a building, impaled his leg on an exposed pipe, resulting in amputation of the leg. In that circumstance, when the minor sued the property owner, the court determined, that's a freakish, bizarre injury, there's no way that's foreseeable. It doesn't apply in our case. The CHA is putting armed guards with no experience in rolling patrol vehicles. It's entirely foreseeable that these armed guards may improperly discharge their firearm and injure somebody in the public. More to the point, in this particular case, the CHA just took one second to look at a security audit folder that it asked AGB to provide. All they had to do was look and see that At the time of the shooting, he didn't have the three or minimum experience that the contract called for. And more importantly, above and beyond that, three months before he shot my client in the face, he was cited for improperly pursuing, fleeing suspects in a rolling patrol vehicle. And you're going to sit there and tell me that it's unforeseeable that he wouldn't do the same thing, that he wouldn't end up in a car chase on a day ride, down Wentworth, through a residential neighborhood? So are you contending that had he had three years of experience, or however they worded it, that this shooting wouldn't have taken place? If he had three years, we certainly wouldn't have alleged it. But the fact that he didn't have three years of experience, that he didn't meet the contract requirements, that the CHA had the right to yank him from the job site, that the CHA had the right, according to Leonard Langston's testimony, to declare AGB investigative services in default, that if he wasn't on the job site because he failed to meet requirements, he would not have shot that client. Their argument is basically, the admin might be a breach of contract regarding the agreement, but it still doesn't create a legal duty. We've never proceeded under the theory. In that particular instance, that's a red arrow. I think it's a smoke screen. And the number of theories that the CHA just alleged, negligent hire, third-party beneficiary of a contract, really alleged professional negligence, medical negligence, or negligent official emotional distress either. Those are all red herrings meant to push the court into a different direction. What we allege is that the AGB investigative, excuse me, the CHA failed in its common law duty of reasonable care over my client that the CHA agreed to. The contract requirements can be used as evidence of breach of that duty. Under Darby, for instance, this kind of leads me into the response to the motion from the trial. In their reply brief, no less, they let us face Darby for the very first time. And Darby is very normal because it actually helps our cause. In Darby, there was a hotel fire, and a guest was injured. And the court in Darby analyzed a couple of different issues. In the issue instruction, there were two breaches, one that the hotel breached the duty of care by failing to put out the fire, and also breached the duty of care by failing to warrant guests at the fire. And the court noted that when it came to the duty to put out the fire, that was a breach that was essentially pulled out of thin air. There was no evidence in the record whatsoever, and I believe the dicta noted that the court scoured the trial record to determine if there was any evidence of support that the hotel breached its duty by failing to put out the fire, and there was none. They found that that was fatally defective. Notably, the court also analyzed the issue of the duty to warrant. What the court found was that hotel employees actually took a course with the Chicago Fire Department that recommended that hotel employees warrant guests of a fire event that occurs. That course from the Chicago Fire Department was used as evidence to establish that a breach occurred, and was proper according to the court. If you look at the allegations that, or the alleged breaches that we issued and not issued instruction, as I noted, the fifth breach essentially mirrors, is synonymous with the breach that the CHA proposed, and on that basis this case should stand purely based on the general verdict rule. But if you look at the other four allegations that we allege, each one of them is based on the testimony of Leonard Langston and the contract itself. I don't have to list it. I don't have to go through it one by one, but they're all listed in our briefs. What we did was entirely proper under Darling and Darby. If you look at the Darling case, for instance, and it's funny when you look at a case that's 60 years old, it's almost like the English language was a different language back then. But if you look at that opinion, the Supreme Court opinion, it actually refers to the appellate court opinion as well. And what the Darling court concluded was that, yes, you can use outside compendium, treatises, hospital guidelines, et cetera, in order to prove breach of care. And the appellate opinion, it actually lists these points. The appellate opinion in 50 Illinois Act 2D253, and this would be from Section 281 to 283, actually lists various issues that were listed, the breaches of duty that was listed in the 20.1 instruction that were listed from these various compendiums and treatises. And they were used in the issue instruction, and the court found that, yes, the plaintiff actually proved, through these treatises, that the defendant breached their duty of care. More importantly, even if one of them was faulty, the general verdict would not apply. I've been so unkind as far as saying that the CHA pursued a particular defense strategy at trial that failed on the merits, but the reality is they didn't help themselves at all. It was a bit of an anemic defense. I mean, if you look at the contract, and this is all in the record, where it's reasonably extrapolated from the record, they contended their defense in this case and indemnification to AGB investigative services, and they didn't do so. And why do we know that? Because there's no way AGB investigative services would have settled this case, except on a global basis, if they had any potential to be on the hook for a judgment against the CHA. They never would have done it. This case was never placed on the insurance state calendar, so we know that there was no contest over duty, no contest over indemnification. There was no contesting over additional insurance status. The CHA did nothing to help itself. Never raised a motion for summary judgment of duty. They should have. They actually agreed to duty, and they agreed to the very breach of duty that we put before the jury. For these reasons, we ask that this panel affirm the jury's verdict, as well as the court's ruling on the motion for new trial. Thank you. And counsel, by the way, anytime you do a decision, the English is always there. Hopefully. Thank you. A few quick points on rebuttal here. I'd like to start with Mr. Taylor's argument about the 10-point IPI instructions, specifically 10.01, 10.02, and 10.04, which define negligence, ordinary care, and, according to Mr. Taylor, impose the duty of care on the CHA in this case. I disagree. I think this court made that clear in ONO v. City of Chicago, which is cited in our brief. The 10.04 instruction generally describes everyone's duty of care, not to negligently increase the risk of harm to other people. But as this court said in ONO, that does not describe what a duty requires of a defendant under specific circumstances. That is case-specific. That depends on the facts. That's why you can't just look at 10.04 in isolation. You have to look at the 20.01 issues instruction to then say, well, is there a duty to either act that way or not act that way? Because if not, the trial court should not have instructed the jury on those negligence allegations. I'd also like to point out that the 10.04 instruction was read to the jury in the Rhodes decision from the Supreme Court, and the Supreme Court still nonetheless affirmed it JNOV because there was no duty of care as a matter of law. So I don't think the 10.04 instruction shoulders the weight that Mr. Taylor's counsel says that it does. I'd also like to touch briefly on a point my friend on the other side raised, that he supposedly never relied on the contract to establish a duty of care. Well, if so, I don't think we'd be here today, because none of those negligence allegations would have been in the issues instruction. Because as we discussed earlier, please show me a law, regulation, rule, anything, that says a security guard needs to have three years of prior experience before they're competent or before they can provide guard services. None exists. This case is also completely unlike Darling, which my friend on the other side relies heavily upon. That was an institutional negligence claim involving a hospital and a patient. Of course the hospital owes their patient a duty of care. There is a direct relationship between the two, where the hospital has physical custody over a patient. That patient shows up, pays money, and is hopefully receiving top-notch medical care. We have no relationship whatsoever here in this case. And I think the Supreme Court said it best in Rhodes, again, when it said, quote, whether a duty was owed by the defendant was not the issue in Darling, a medical malpractice case. That is exactly what the issue is in this case, whether a duty exists. So we can't just presuppose what Darling already knew, that there was a duty between a hospital and patient. That's why we have to look at the security services agreement that Mr. Taylor cannot rely upon to form a duty, the common law, which he also can't show a duty exists under, or the voluntary undertaking doctrine. There's no duty here. Can I bring you back to the facts a bit? I'm sorry to interrupt.  The incident which caused McLaren, I'm sorry if you have his name, to chase after the offenders, if you will, did that have anything to do with CHA property, CHA residents? I'd say only tangentially in the fact that he was in his AGB-marked vehicle going from one CHA property to another. No involvement as far as residents or actual CHA property is concerned. He wasn't on a CHA property roving around the outside of that building or anything like that. But he was traveling from building A to building B. I think factually what initiated this was McLaren witnessed the individuals in the Kia firing rounds into a CHA property. Is that correct? I don't think so. My understanding is that the guns were pointed up and they were shooting into the sky. I believe that's what Mr. McLaren was testifying to at trial, and I think that's the consistent messaging throughout trial. So it's not as if somebody on CHA property was being endangered by those shots being fired. Does that address your question, Justice Rochford? Yes. As far as whether or not we were raising new arguments on appeal that were never raised below, I think that fundamentally misunderstands appellate preservation principles. We've pointed to the Supreme Court's decision in Brunton v. Kruger in the 1010 North Lakeshore Association case. The Supreme Court in both of those cases discussed that parties preserve issues for appeal. They do not have to limit their arguments in reviewing courts to the exact same arguments that were made below. For all the reasons we've discussed earlier, the duty issue was adequately preserved, so we don't have to mirror the exact same arguments that were made in the trial court. This Court recognized that same principle in People v. Dobbins, which is a 2024 decision from this Court, citing to 1010 Lakeshore. So I don't think that has any legs. As far as the control argument that my friend on the other side raised over AGB, the contract provisions are broad in some respects. I would like to point out, though, that that was the scope of services that was sent out in connection with the RFP to potential applicants who wanted to serve as the security company in this case. It necessarily has to be broad because those companies need to know whether they fit the bill for this type of position or not. Also, we can look at the Supreme Court's decision in Carnegie v. Union Pacific where very similar contractual requirements were not enough to raise an issue of retained control under Section 414 of the Restatement Second. I think my friend on the other side also starts blurring the lines like he did below when he said essentially that the CHA was assigning Mr. McLaurin to properties or putting the gun in his hand or saying what Mr. McLaurin was doing. The CHA wasn't doing any of that. Mr. McLaurin never interacted with CHA personnel, and that's because the CHA hired AGB, and as an independent contractor, as discussed in the contract, and as consistent with the testimony at trial, AGB was controlling what Mr. McLaurin was doing, not the CHA. Now, I'd like to just raise one final point here relating to the general verdict rule. My friend on the other side says, well, we have five allegations of negligence that are all independent of one another, and his argument is that the negligent management claim is not impacted by any of the CHA's argument on appeal. I strongly disagree, because if you look at the plaintiff's brief at page 39, they discuss all of the instances of negligent management, and what did it have to do with did not review AGB guard credentialing, again, seeing whether or not Mr. McLaurin had three years of security guard experience before being staffed. Did it confirm that it received updated guard credentialing, again, related to the three-year experience? All roads lead to the security services agreement in what it's supposedly required, but under Illinois law, we can't rely solely on that. We have to find an obligation under the common law or statutes, ordinances, regulations. They're unable to do so. So for Mr. Taylor to say that Mr. McLaurin was inexperienced full stop because he didn't have three years is unsupported by the law, and I don't think it could have been the basis for a negligence claim at trial here. The general verdict rule doesn't apply because there is no single error-free theory of liability that saves this verdict. So for all of these reasons, the CHA asked this court to reverse the jury verdict and enter judgment in its favor or remand for a new trial. Thank you. Thank you. I'm sorry. Your opposing counsel mentioned a motion for directive finding and said the CHA did not make a motion for directive finding. True. So at that point, other than, you know, prior to trial, you didn't know if there were some claims that may have, you know, raised a duty. But by that time, the CHA would have been aware that there was no evidence raising that duty, that what was it, supervising or negligence supervising or hiring, that you thought a summary judgment motion wouldn't deal with. I'm not sure I agree with the timeline necessarily, Justice Rochford, and that's because we didn't have the issues instruction until essentially the second to last day of trial where the DV motion would have been filed at the end of the plaintiff's case. So we didn't really know precisely what claims were going to go to the jury or what allegations of negligence. I'd also like to point out, though, that in the post-trial motion statute itself, there's no requirement to file a motion for directed verdict because it allows parties to file motions for JNOV regardless of a directed verdict motion was filed. So I ultimately think that doesn't impact the arguments made here today. Okay. Thank you.  Okay. Gentlemen, both of you, outstanding job. Really appreciate it. It appeals to the law nerd in all of us, your arguments. Very, very good. We thank you, gentlemen. We will take this matter under advisement and issue a written order in a reasonable length of time. We thank you both, and with that, we will stand adjourned. All rise.